OHIO STATE BAR ASSOCIATION *v.* KANTER.

[Cite as *Ohio State Bar Assn. v. Kanter* (1999), 86 Ohio St.3d 554.]

(No. 98–2723—Submitted May 5, 1999—Decided September 8, 1999.)

*Harlan Stone Hertz, Richard Gibbs Johnson* and *Eugene P. Whetzel,* for relator.

*Richard S. Koblentz* and *Craig J. Morice,* for respondent.

---

**Per Curiam.** This is the third in a series of cases involving a scheme for the payment of "kickbacks" by Glidden's outside counsel to its in-house counsel for the referral of the company's legal work. In *Ohio State Bar Assn. v. Zuckerman* (1998), 83 Ohio St.3d 148, 699 N.E.2d 40, we disciplined one of Glidden's outside counsel, Richard Zuckerman, for taking part in the program of giving expected gifts to Glidden's inside counsel for the referral of cases. In *Disciplinary*

*Counsel v. Linick* (1999), 84 Ohio St.3d 489, 705 N.E.2d 667, we suspended Glidden's in-house counsel, David M. Linick, for his part in the scheme.

In this case we consider respondent's kickbacks to Linick, which were more substantial than Zuckerman's "referral" payments. Having reviewed the record, we adopt the board's findings and conclusions, but not its recommendation.

DR 2–103(B) proscribes a lawyer's compensating a person or giving a person anything of value to recommend or secure employment as an attorney, or rewarding a person for having made a recommendation resulting in one's employment as an attorney. DR 2–107(A) prohibits a division of fees by lawyers not in the same firm without, *inter alia,* the prior consent of the client. Each of these rules precludes the kickbacks arranged by respondent and Linick.

We use the term "kickback" to describe the act of providing agreed payment to an official of an organization in consideration for receiving employment by the organization in a specific matter. Kickbacks undermine the lawyer-client relationship and the relationship between in-house and outside counsel, as well as the integrity and reputation of the legal professionals. Kickbacks also result in a company's retaining counsel for the wrong reasons and overpaying for the legal services that it receives. An organization should be able to rely on its in-house counsel to choose honestly among attorneys by comparing, so far as possible, their proposed fees, their reputations, their skills and abilities, and their knowledge of the subject area and the law. As we said in *Cincinnati Bar Assn. v. Haas* (1998), 83 Ohio St.3d 302, 304, 699 N.E.2d 919, 920, "when a referral is the result of monetary influence, it lacks the reliability of a disinterested recommendation."

Moreover, concerned as we are with the damage kickbacks cause to clients, we are just as concerned with the harm they cause to the integrity of the legal profession. Their very use invokes the image that the law involves manipulation by under-the-table deals and that law is not only less than an honorable profession, but even less than an honest commercial venture. We recognize that cost is an important factor when an entity selects an attorney. Yet kickbacks turn the careful selection of professionals into secret bidding contests and prevent attorneys from competing for legal employment in a fair and corruption-free environment. We strongly disapprove and condemn such practices.

In addition, respondent failed to care for his client's funds properly. DR 9–102 provides that a lawyer shall deposit all client funds in one or more identifiable bank accounts in which no funds belonging to the lawyer are deposited. Here respondent wrongfully used his trust account to receive personal as well as client funds and to pay personal bills and business expenses. An attorney's use of his trust account in such a manner violates the Disciplinary Rule. *Dayton Bar Assn.*

*v. Rogers* (1999), 86 Ohio St.3d 25, 711 N.E.2d 222; *Disciplinary Counsel v. Phillips* (1998), 81 Ohio St.3d 80, 82, 689 N.E.2d 541, 542.[1]

Finally, respondent's lies to relator's investigator at the inception of the case violated DR 1–102(A)(4). In addition, and although the board failed to pursue the matter, respondent admitted at oral argument that, as alleged in the amended complaint, he failed to file federal and state income tax returns timely for four years. Respondent was not prosecuted by any taxing authority for this failure, but on similar occasions we have found that an evasion of tax reporting laws violated the Disciplinary Rules. *Disciplinary Counsel v. Massey* (1998), 80 Ohio St.3d 605, 687 N.E.2d 734.

Given respondent's participation in the kickback scheme, his lying to disciplinary authorities during the investigatory process, and his cavalier attitude about the use of his trust fund, a more severe sanction is warranted than that recommended by the board. Respondent is hereby suspended from the practice of law for two years. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

---

1. The relator noted that respondent deposited more than $500,000 and kept it for nearly a month in his IOLTA (Interest on Lawyers Trust Account). In this case, relator might have questioned whether respondent was derelict in his fiduciary duty to Glidden by placing such a substantial amount in an account such as an IOLTA, which provides no interest to a client. An IOLTA is an account which a lawyer may "establish * * * for purposes of depositing client funds * * * that are nominal in amount or are to be held * * * for a short period of time," and which "[e]ach attorney who receives funds belonging to a client shall * * * [e]stablish." R.C. 4705.09(A)(1) and (2). Attorneys have the discretion to determine what constitutes a nominal amount and a short period of time, R.C. 4507.09(A)(3).