**[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 554.]**

OHIO STATE BAR ASSOCIATION *v.* KANTER.

[Cite as *Ohio State Bar Assn. v. Kanter*, 1999-Ohio-122.]

*Attorneys at law—Misconduct—Two-year suspension—Payment of kickbacks by outside counsel to company's in-house counsel for referrals of company's legal work—Using trust account to receive personal as well as client funds and to pay personal bills and business expenses—Lying to disciplinary authorities.*

(No. 98-2723—Submitted May 5, 1999—Decided September 8, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-48.

_____

{¶ 1} On June 25, 1998, relator, Ohio State Bar Association, filed an amended complaint charging that respondent, Frederick D. Kanter of Woodmere, Ohio, Attorney Registration No. 0014025, violated several Disciplinary Rules while representing the Glidden Company ("Glidden"). Relator also alleged that until June 1998, respondent failed to file federal, state, and city tax returns for the years 1993 through 1996.

{¶ 2} In August 1998, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") issued a pretrial order that effectively eliminated the count pertaining to respondent's failure to file timely tax returns. The amended complaint, as modified, was then submitted to the panel.

{¶ 3} The panel found that for twenty years respondent made referral or kickback payments to David M. Linick, the in-house, salaried counsel of Glidden, who retained respondent as outside counsel to represent Glidden in various legal proceedings. During that period, respondent usually paid Linick thirty percent of each fee he received from Glidden. The panel specifically found that in August

1995, Linick hired respondent to represent Glidden, as a tenant, in negotiating an early termination of a lease with one of its landlords. Respondent received a fee of $24,000 for his legal work, and shortly thereafter paid Linick $7,200.

{¶ 4} The panel further found that in 1993, Linick arranged for Glidden to employ respondent on a contingent fee basis to represent Glidden in the defense of a preference claim by a Chapter 11 debtor in the United States Bankruptcy Court in the state of Washington. Respondent negotiated a settlement of the preference claim, and on August 19, 1993, received $521,000 from Glidden, which he deposited in his IOLTA (Interest on Lawyers Trust Account). That amount consisted of $371,645.61 to be paid to the Chapter 11 debtor upon court approval of the settlement and respondent's fee of $150,000. On September 13, 1993, special counsel for the Chapter 11 debtor informed respondent that the bankruptcy court had approved the settlement, and from his trust account, respondent paid the settlement amount to the Chapter 11 debtor and $60,000 to Linick.

{¶ 5} Both before and after the disbursement of the preference settlement, respondent used the trust account as a personal and business expense account, depositing income from his salaried position at the city of Lyndhurst and paying personal bills and business expenses from the account.

{¶ 6} The panel also found that during the initial stages of the disciplinary proceedings, respondent in a letter to relator's investigator asserted, "Let me make something very clear: Mr. Linick received no monies from me for work related to Glidden." He later admitted that that statement was false.

{¶ 7} The panel concluded that respondent's conduct violated DR 2-103(B) (a lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment, or as a reward for having made a recommendation resulting in his employment), DR 2-107(A) (a division of fees by lawyers not in the same firm may be made only with the prior consent of the client and only if the division is in proportion to the services performed by each lawyer,

or each assumes full responsibility, the terms and division and identity of lawyers are disclosed in writing to the client, and the total fee is reasonable), DR 9-102 (a lawyer shall deposit all client funds in one or more identifiable bank accounts in which no funds belonging to lawyer are deposited), and DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The panel recommended that respondent be suspended from the practice of law for one year. The board adopted the findings, conclusions, and recommendation of the panel.

————————————

*Harlan Stone Hertz, Richard Gibbs Johnson* and *Eugene P. Whetzel,* for relator.

*Richard S. Koblentz* and *Craig J. Morice,* for respondent.

————————————

***Per Curiam.***

**{¶ 8}** This is the third in a series of cases involving a scheme for the payment of "kickbacks" by Glidden's outside counsel to its in-house counsel for the referral of the company's legal work. In *Ohio State Bar Assn. v. Zuckerman* (1998), 83 Ohio St.3d 148, 699 N.E.2d 40, we disciplined one of Glidden's outside counsel, Richard Zuckerman, for taking part in the program of giving expected gifts to Glidden's inside counsel for the referral of cases. In *Disciplinary Counsel v. Linick* (1999), 84 Ohio St.3d 489, 705 N.E.2d 667, we suspended Glidden's in-house counsel, David M. Linick, for his part in the scheme.

**{¶ 9}** In this case we consider respondent's kickbacks to Linick, which were more substantial than Zuckerman's "referral" payments. Having reviewed the record, we adopt the board's findings and conclusions, but not its recommendation.

**{¶ 10}** DR 2-103(B) proscribes a lawyer's compensating a person or giving a person anything of value to recommend or secure employment as an attorney, or rewarding a person for having made a recommendation resulting in one's

employment as an attorney. DR 2-107(A) prohibits a division of fees by lawyers not in the same firm without, *inter alia*, the prior consent of the client. Each of these rules precludes the kickbacks arranged by respondent and Linick.

{¶ 11} We use the term "kickback" to describe the act of providing agreed payment to an official of an organization in consideration for receiving employment by the organization in a specific matter. Kickbacks undermine the lawyer-client relationship and the relationship between in-house and outside counsel, as well as the integrity and reputation of the legal professionals. Kickbacks also result in a company's retaining counsel for the wrong reasons and overpaying for the legal services that it receives. An organization should be able to rely on its in-house counsel to choose honestly among attorneys by comparing, so far as possible, their proposed fees, their reputations, their skills and abilities, and their knowledge of the subject area and the law. As we said in *Cincinnati Bar Assn. v. Haas* (1998), 83 Ohio St.3d 302, 304, 699 N.E.2d 919, 920, "when a referral is the result of monetary influence, it lacks the reliability of a disinterested recommendation."

{¶ 12} Moreover, concerned as we are with the damage kickbacks cause to clients, we are just as concerned with the harm they cause to the integrity of the legal profession. Their very use invokes the image that the law involves manipulation by under-the-table deals and that law is not only less than an honorable profession, but even less than an honest commercial venture. We recognize that cost is an important factor when an entity selects an attorney. Yet kickbacks turn the careful selection of professionals into secret bidding contests and prevent attorneys from competing for legal employment in a fair and corruption-free environment. We strongly disapprove and condemn such practices.

{¶ 13} In addition, respondent failed to care for his client's funds properly. DR 9-102 provides that a lawyer shall deposit all client funds in one or more identifiable bank accounts in which no funds belonging to the lawyer are deposited. Here respondent wrongfully used his trust account to receive personal as well as

client funds and to pay personal bills and business expenses. An attorney's use of his trust account in such a manner violates the Disciplinary Rule. *Dayton Bar Assn. v. Rogers* (1999), 86 Ohio St.3d 25, 711 N.E.2d 222; *Disciplinary Counsel v. Phillips* (1998), 81 Ohio St.3d 80, 82, 689 N.E.2d 541, 542.[1]

{¶ 14} Finally, respondent's lies to relator's investigator at the inception of the case violated DR 1-102(A)(4). In addition, and although the board failed to pursue the matter, respondent admitted at oral argument that, as alleged in the amended complaint, he failed to file federal and state income tax returns timely for four years. Respondent was not prosecuted by any taxing authority for this failure, but on similar occasions we have found that an evasion of tax reporting laws violated the Disciplinary Rules. *Disciplinary Counsel v. Massey* (1998), 80 Ohio St.3d 605, 687 N.E.2d 734.

{¶ 15} Given respondent's participation in the kickback scheme, his lying to disciplinary authorities during the investigatory process, and his cavalier attitude about the use of his trust fund, a more severe sanction is warranted than that recommended by the board. Respondent is hereby suspended from the practice of law for two years. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

---

1. The relator noted that respondent deposited more than $500,000 and kept it for nearly a month in his IOLTA (Interest on Lawyers Trust Account). In this case, relator might have questioned whether respondent was derelict in his fiduciary duty to Glidden by placing such a substantial amount in an account such as an IOLTA, which provides no interest to a client. An IOLTA is an account which a lawyer may "establish * * * for purposes of depositing client funds * * * that are nominal in amount or are to be held * * * for a short period of time," and which "[e]ach attorney who receives funds belonging to a client shall * * * [e]stablish." R.C. 4705.09(A)(1) and (2). Attorneys have the discretion to determine what constitutes a nominal amount and a short period of time, R.C. 4507.09(A)(3).

_____